# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| MARQUIS SOFTWARE SOLUTIONS, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| v. | § | Civil Action No. 4:26-cv-195 |
| | § | Judge Mazzant |
| SONICWALL INC., | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant SonicWall Inc.'s Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(A) (the "Motion") (Dkt. #8). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **DENIED**.

## BACKGROUND

This is a data breach case. Plaintiff Marquis Software Solutions, Inc., a financial software company, contracted Defendant SonicWallI Inc. to protect its customers' digital data (Dkt. #18 at p. 7). Plaintiff alleges that on August 14, 2025, an unauthorized user executed a malware attack, and thereby gained access to Plaintiff's customer data (Dkt. #1 at ¶ 4). The unauthorized actor misused the personal information of Plaintiff's customers and also hijacked Plaintiff's data servers, resulting in Plaintiff's clients filing several lawsuits against Plaintiff (Dkt. #1 at ¶¶ 5, 50).

On February 23, 2026, Plaintiff sued Defendant for negligence, gross negligence, unjust enrichment, negligent misrepresentation, contribution, and common law indemnity (Dkt. #1 at pp. 23–32). On April 17, 2026, Defendant filed this Motion, requesting that the Court transfer this case to the Northern District of California (Dkt. #8). Defendant seeks to enforce a

forum-selection clause, which was part of the terms and conditions that Plaintiff was required to accept to use Defendant's software (Dkt. #8-1 at p. 5). The text of the forum-selection clause, which includes a choice-of-law provision, reads as follows:

> This Agreement shall be governed by and construed in accordance with the laws of the State of California, without giving effect to any conflict of laws principles that would require the application of laws of a different state. Any action seeking enforcement of this Agreement or any provision hereof shall be brought exclusively in the state or federal courts located in the [sic] Santa Clara County, California.

(Dkt. #19-2 at p. 27). Plaintiff filed a Response, arguing that the forum-selection clause is invalid (Dkt. #18). Defendant then filed a Reply, and Plaintiff filed a Sur-Reply (Dkt. #19; Dkt. #20).

## LEGAL STANDARD

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "The underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their privilege under [the general venue statute] by subjecting defendants to venues that are inconvenient under the terms of § 1404(a)." *In re Volkswagen of Am., Inc. ("Volkswagen II")*, 545 F.3d 304, 313 (5th Cir. 2008).

For the ordinary § 1404(a) motion, the Court makes a threshold inquiry into "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed," or whether all parties have consented to a particular jurisdiction. *In re Volkswagen AG ("Volkswagen I")*, 371 F.3d 201, 203 (5th Cir. 2004). The Court then considers the propriety of transfer based on the convenience of the parties (referred to as the "private interest factors") and various public interest considerations (the so-called "public interest factors"). *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013).

"The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum." *Id.* In determining whether to transfer a case under a forum-selection clause, the Court first determines whether the forum-selection clause is mandatory or permissive. *Weber v. PACT XPP Tech., AG*, 811 F.3d 758, 770–71 (5th Cir. 2016). The Court then decides whether the forum-selection clause applies to the dispute at hand, which involves two separate determinations: (1) whether the forum-selection clause is valid and enforceable; and (2) whether the case falls within the scope of the forum-selection clause. *Id.* at 770.

Forum-selection clauses are presumptively valid and should be enforced "unless [the party opposing enforcement can] clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972); *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593–95 (1991); *Haynsworth v. The Corp.*, 121 F.3d 956, 962–63 (5th Cir. 1997). The party resisting transfer therefore bears the "heavy burden" of showing that enforcement of the clause would be unreasonable under the circumstances. *See, Weber*, 811 F.3d at 773–74; *Haynsworth*, 121 F.3d at 962–63.

Ultimately, if the forum-selection clause is valid and enforceable, district courts are required "to adjust their usual § 1404(a) analysis in three ways." *Atl. Marine*, 571 U.S. at 63. First, the plaintiff's choice of forum carries no weight. *Id.* Second, the court "must deem the private-interest factors to weigh entirely in favor of the pre-selected forum." *Id.* at 64. That is, the court may consider arguments only about public interest factors. *Id.* Because the public interest factors will rarely defeat a motion to transfer, "forum-selection clauses should control except in unusual

cases." *Id*. Third, the transferee venue—that is, the pre-selected forum—will not carry with it the original venue's choice-of-law rules. *Id*.

## ANALYSIS

The parties disagree about whether this action falls within the language of the parties' forum-selection clause. As a threshold matter, the Court must determine which law governs interpretation of the forum-selection clause. "Although enforceability of a forum selection clause is analyzed under federal law, where there exist both valid forum selection and choice of law clauses, the substantive law identified in the choice of law clause governs interpretation of the forum selection clause." *Provitas, LLC v. Quality Ingredients Corp.*, No. 4:21-CV-00196, 2021 WL 5907790, at *12 (E.D. Tex. Dec. 14, 2021) (citations omitted).

Here, the parties chose California as the substantive law governing their agreement (Dkt. #19-2 at p. 27). Thus, California law would ordinarily govern interpretation of the forum-selection clause. *See Provitas*, 2021 WL 5907790, at *12. However, Plaintiff argues that the parties' choice-of-law provision is invalid (Dkt. #18 at 6–7). As such, the Court begins by analyzing the choice-of-law provision to see if it is valid and enforceable.

### I. The choice-of-law provision is valid and enforceable.

The parties dispute whether the choice-of law provision is enforceable (Dkt. #18 at pp. 6–7; Dkt. #19 at pp. 2–3). When a party contests the enforceability of a choice-of-law provision, a federal court sitting in diversity must resolve the dispute using the choice-of-law principles of the state in which it sits. *Roberts v. Energy Dev. Corp.*, 235 F.3d 935, 937–38 (5th Cir. 2000) (citations omitted) (holding that a forum state's conflict of law articles determined the enforceability of a choice-of-law provision); *NCH Corp. v. Broyles*, 749 F.2d 247, 250 (5th Cir. 1985); *Total Safety v. Rowland*, No. CIV.A. 13-6109, 2014 WL 6485641, at *6 (E.D. La. Nov. 18, 2014); *see*

*Overstreet v. Contigroup Cos., Inc.*, 462 F.3d 409, 411 (5th Cir. 2006) (explaining in dicta that the forum state's law likely applies when a choice-of-law provision is called into question). Because Plaintiff challenges the validity of the choice-of-law provision, the Court must apply Texas's choice-of-law rules to determine whether the provision is valid. *See Energy Dev. Corp.*, 235 F.3d at 937.

The next issue is whether Texas's choice-of-law rules would enforce the parties' choice-of-law agreement. "The Texas Supreme Court has adopted the Restatement of Conflict of Laws Section 187's framework for determining whether the parties' choice-of-law agreement is enforceable." *McKissock, LLC v. Martin*, 267 F. Supp. 3d 841, 849 (W.D. Tex. 2016) (citing *Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 319, 325 (Tex. 2014)).

Plaintiff makes a unique argument at this point. Plaintiff contends that the contract, as a whole, is illusory, rendering the choice-of-law provision void (Dkt. #18 at pp. 6–7). Plaintiff argues that there is no reason for the Court to interpret a void choice-of-law provision, and that leaves the Court with only Texas substantive law to apply to this case (Dkt. #18 at pp. 6–7). Defendant counters that the Court should deem the contract valid under the chosen state's law of California (Dkt. #19 at pp. 2–3). As such, the parties dispute whether California or Texas law should determine whether the contract and choice-of-law provision are illusory.

A comment to Section 187 helps resolve this issue and makes clear that Texas law determines the very existence of a valid choice-of-law provision. Before a Court may determine whether it can enforce a choice-of-law provision, the parties must "establish[] to the satisfaction of the forum that the parties have chosen the state of the applicable law." Restatement (Second) of Conflict of Laws § 187 cmt. a (A.L.I. 1989). Therefore, the Court must first determine whether the

parties have "chosen the state"—meaning whether the parties formed a valid contract—before further considering whether to enforce the choice-of-law provision. *See id.*; *Johnson v. Cont'l Fin. Co.*, 131 F.4th 169, 178 (4th Cir. 2025) ("[W]e cannot apply *any* provision of the contract, including its choice-of-law clause, before deciding if the parties formed an agreement."); *Del Bosque v. AT & T Advert., LP*, 441 F. App'x 258, 260 (5th Cir. 2011) (per curiam) (unpublished) (citation omitted) ("The presence of a choice-of-law provision in the settlement agreement itself logically cannot control our resolution of this question, inasmuch as the issue to be resolved is the validity of that very agreement . . . ."); *Crellin Techs., Inc. v. Equipmentlease Corp.*, 18 F.3d 1, 6 n.7 (1st Cir. 1994) (citation omitted) ("Choice of law in a contract case requires a court to make a threshold determination as to the efficacy of any choice-of-law provision that the parties may have included in the contract documents."). As such, the Court must decide whether the parties' contract is illusory under Texas law before deciding whether to enforce the choice-of-law provision.

**A. The contract's unilateral, no-notice modification provision is illusory.**

Plaintiff argues that the contract is illusory because the agreement allows Defendant to unilaterally modify its terms without notice (Dkt. #18 at pp. 6–7). "Promises are illusory and unenforceable if they lack bargained-for consideration because they fail to bind the promisor." *Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 505 (Tex. 2015) (citation omitted). If one party can unilaterally modify or terminate an agreement without prior notice to the other party, that agreement is generally based upon an illusory promise and therefore unenforceable. *In re 24R, Inc.*, 324 S.W.3d 564, 567–68 (Tex. 2010); *Weekley Homes, LP v. Rao*, 336 S.W.3d 413, 419 (Tex.App.—Dallas 2011, pet. denied); *see In re Halliburton Co.*, 80 S.W.3d 566, 569–70 (Tex. 2002). The parties' agreement states, "[Defendant] may modify or amend this Agreement and the Supplemental Agreements at any time without notice." (Dkt. #8-1 at p. 29).

Because this language allows Defendant to disavow its promises at any time, it deems the contract illusory. *See* Restatement (Second) of Contracts § 77 cmt. b (A.L.I. 1979).

Indeed, numerous courts have held that similar contract language rendered contracts illusory under Texas law. For example, the Fifth Circuit, applying Texas law, invalidated an arbitration provision because the agreement provided, "[Employer] has the right to revise, delete, and add to the employee handbook." *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 204–209 (5th Cir. 2012); *see also Morrison v. Amway Corp.*, 517 F.3d 248, 253, 257 (5th Cir. 2009) (holding similarly); *Torres v. S.G.E. Mgmt., LLC*, 397 F. App'x 63, 67–68 (5th Cir. 2010) (unpublished) (holding similarly and collecting cases). Likewise, The Court of Appeals for the Fifth District of Texas at Dallas held that an agreement was illusory because of a provision that read, "[O]nly the President of the Company or his appointed representative may approve changes . . . If changes are approved, you will receive notification . . . ." *Weekley Homes*, 336 S.W.3d at 416, 419–21.

The Supreme Court of Texas has also indicated in dicta that a unilateral, no-notice modification provision renders a contract illusory. In *J.M. Davidson, Inc v. Webster*, the Supreme Court of Texas explained that a contractual right to "unilaterally abolish or modify personnel policies" without notice would render an agreement illusory, but declined to rule as such because of other ambiguities within the contract. 128 S.W.3d 223, 230 n.2, 231 (Tex. 2003) ("[M]ost courts that have considered this issue have held that, if a party retains the unilateral, unrestricted right to terminate the arbitration agreement, it is illusory."). The Supreme Court of Texas later upheld a contract that granted a party a *limited* right to modify a contract's terms, but nevertheless explained that the provision would be illusory if it allowed a party to "avoid its promise to arbitrate by

amending the provision or terminating it altogether." *In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 424 (Tex. 2010) (citation omitted).

Here, the relevant language allows Defendant to amend the agreement at any time without notice or limitation (*See* Dkt. #8-1 at p. 29). As the Supreme Court of Texas has explained, the central question is whether the terms of the contract allow a party to "avoid its promise." *Odyssey*, 310 S.W.3d at 424. Under this modification provision, Defendant could amend its choice-of-law provision, or any other agreement in the contract, to immediately void its obligations. *See id.* Under Texas law, such a provision is fatal to an otherwise valid agreement. *See id.*; *Carey*, 669 F.3d at 204–209. Because the modification provision renders Defendant's promises illusory, the provision is invalid. *See J.M. Davidson*, 128 S.W.3d at 230 n.2.

**B. The Court can sever out the illusory modification provision, and therefore preserve the forum-selection clause and choice-of-law provision.**

The parties' agreement contains a severability clause, which states, "If any provision of this Agreement shall be held . . . invalid or contrary to law . . . the remaining provisions of this Agreement will remain in full force and effect." (Dkt. #8-1 at p. 28; Dkt. #19 at p. 3 n.1).

The issue is whether Texas law preserves the remainder of a contract by severing out an illusory modification provision. "An illegal or unconscionable provision of a contract may generally be severed so long as it does not constitute the essential purpose of the agreement." *In re Poly-America, LP*, 262 S.W.3d 337, 360 (Tex. 2008). "Severability is determined by the intent of the parties as evidenced by the language in the contract." *In re C.C.E.*, 530 S.W.3d 314, 320 (Tex. App.—Hous. [14th Dist.] 2017, no pet.) (citation omitted). When there is a severability clause, courts will not sever out any provision that is integral to the entire contract. *John R. Ray & Sons, Inc. v. Stroman*, 923 S.W.2d 80, 87 (Tex. App.—Hous. [14th Dist.] 1996, writ denied).

Here, the Court may sever the no-notice modification provision because it is not integral to the overall agreement. *See id.* The primary purpose of the parties' agreement was to define indemnity rights, liability limits, and the general rights and duties of the parties with respect to the software at issue (*See* Dkt. #19-2 at pp. 13–19, 20–23). The modification provision merely qualifies the broader agreement, but it is not the essential purpose of the agreement. *See Poly-America*, 262 S.W.3d at 360. Because the modification provision is not the essential purpose of the agreement, the Court may sever this provision out. *See id.*

The Court also notes that Texas courts express an overall willingness to sever out invalid provisions of contracts—whether the provision was illegal, unconscionable, or illusory. *E.g.*, *Gala Special Events, Ltd. v. Tijerina*, No. 13-24-00166-CV, 2025 WL 2166593, *6–*7 (Tex. App.—Corpus Christi–Edinburg July 31, 2025, pet. denied) (applying severability analysis to an illusory contract); *Poly-America*, 262 S.W.3d at 359–60 (severing an illegal provision out of a contract). The Court therefore severs the modification provision and preserves the remainder of the contract, including its choice-of-law provision and its forum-selection clause.

**C. California law governs the Court's interpretation of the contract because the choice-of-law provision is enforceable.**

Now that the Court has severed the modification provision from the contract, the next issue is whether Texas law would enforce the remaining choice-of-law provision. As noted earlier, Texas uses Restatement of Conflict of Laws Section 187's approach to determine the enforceability of choice-of-law provisions. *See Drennen*, 452 S.W.3d at 324–25. Section 187(1) explains that a choice-of-law provision will "be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." Restatement (Second) of Conflict of Laws § 187(1) (A.L.I. 1989). Here, the "particular issue" is the location where the parties will

litigate this suit. This decision could be "resolved by an explicit provision" within the agreement. *See id.*; *Nat'l Am. Ins. Co. v. Innovative PBX Servs., Inc.*, No. EP-01-CA-483-DB, 2003 WL 1566557, at *3 (W.D. Tex. Jan. 28, 2003) ("Because the Parties in this case could have resolved the issue by an explicit provision . . . the chosen state[] governs their contractual rights."); *Fagan Holdings, Inc. v. Thinkware, Inc.*, 750 F. Supp. 2d 820, 824–25 (S.D. Tex. 2010); *Int'l Interests, LP v. Hardy*, No. CIV.A. H-03-2418, 2004 WL 3998092, at *3–*4 (S.D. Tex. Nov. 17, 2004); *Caton v. Leach Corp.*, 896 F.2d 939, 942–43 (5th Cir. 1990). As such, the Court enforces the choice-of-law provision, and California law governs interpretation of the forum-selection clause.

## II. The Forum-Selection Clause

The Court must now make three determinations: (1) whether the forum-selection clause is mandatory or permissive; (2) whether the forum-selection clause is valid and enforceable; and (3) whether this action falls within the scope of the forum-selection clause. *See Weber*, 811 F.3d at 768–775; *Davis v. Meta Platforms, Inc.*, No. 4:22-CV-01001, 2023 WL 4670491, at *5 (E.D. Tex. July 20, 2023) (citing *PCL Civil Constructors, Inc. v. Arch Ins. Co.*, 979 F.3d 1070, 1074 (5th Cir. 2020)).

### A. The forum-selection clause is mandatory.

The first issue is whether the forum-selection clause is mandatory or permissive. "Only mandatory clauses justify transfer or dismissal." *Weber*, 811 F.3d at 768. "An FSC is mandatory only if it contains clear language specifying that litigation *must* occur in the specified forum . . . ." *Id.*

Here, the forum-selection clause reads, "Any action seeking enforcement of this Agreement or any provision hereof shall be brought exclusively in the state or federal courts located in the [sic] Santa Clara County, California." (Dkt. #19-1 at p. 2). This forum-selection clause is mandatory because it contains the words "shall" and "brought exclusively" (Dkt. 8 at p. 5). *See*

*Moates v. Facebook, Inc.*, No. 4:21-CV-694-ALM-KPJ, 2022 WL 2707745, at *3 (E.D. Tex. June 13, 2022) ("In California, where a forum selection clause uses the word 'exclusively' or 'exclusive,' the forum selection clause is mandatory.") (citing *Berg v. MTC Elec. Techs. Co.*, 71 Cal. Rptr. 2d 523, 530 (Cal. Ct. App. 1998)). Therefore, the forum-selection clause is mandatory. *See id.*

**B. The forum-selection clause is valid and enforceable.**

The forum-selection clause is valid and enforceable. Forum-selection clauses are "presumptively valid"; there is a "strong presumption of enforceability." *Weber*, 811 F.3d at 774. Plaintiff raises a number of objections to the forum-selection clause, and the Court addresses each below.[1]

The forum-selection clause is valid because Defendant provides sufficient evidence to establish that the parties entered the agreement. Plaintiff contends that the Court should find the forum-selection clause invalid because (1) the contract is illusory and (2) Defendant failed to provide sufficient evidence of the parties' agreement. The Court has already addressed the first argument; while the modification provision is illusory, the Court may sever the illusory provision out. *See supra* Section I. Because the court severs the modification provision from the forum-selection clause, the forum-selection clause remains valid.[2] *See Weber*, 811 F.3d at 773 ("Arguments that go to the validity of the contract as a whole do not prevent enforcement of an FSC . . . .").

[1] Plaintiff's arguments regarding the validity of the forum-selection clause could carry weight at other stages of litigation, but the Fifth Circuit readily upholds forum-selection clauses at early stages of litigation—even if a party raises potentially meritorious arguments regarding the contract's validity or enforceability. *E.g.*, *Weber*, 811 F.3d at 773–74 (rejecting a party's argument that the FSC was procured by fraud because it does not "overcome the strong presumption of enforceability").

[2] California law should arguably determine whether the Court can sever the contract to preserve the forum-selection clause now that the Court determined the choice-of-law provision is enforceable. *Provitas*, 2021 WL 5907790, at *12 (citations omitted). The result is no different under California law: A court may sever an illusory modification provision from a forum-selection clause. *See* Cal. Civ. Code § 1599; *Fitzpatrick v. Country Thunder Holdings, LLC*, No. CV203571MWFAGRX, 2020 WL 5947624, at *4 (C.D. Cal. July 24, 2020); *see also Weber*, 811 F.3d at 774 ("[T]he Court is to treat the FSC as both severable and presumptively valid.").

As to the second point, Plaintiff raises a number of evidentiary objections to Defendant's motion to transfer. Plaintiff argues that Defendant's affidavit is not based on personal knowledge because Defendant's affiant was not an employee of Defendant at the time of the agreement (Dkt. #18 at p. 5 n.2). Furthermore, Plaintiff argues that Defendant attached a wrong version of the agreement (Dkt. #18 at p. 3).

For venue purposes, Defendant has met its burden of establishing that the parties agreed to a valid forum-selection clause because Defendant provided the language of the clause and an affidavit attesting to the agreement between the parties. "Defendants seeking a transfer cannot carry their burden by merely making unsupported assertions, but rather they must properly establish relevant venue facts by affidavit, deposition, or otherwise." *SEC v. Coldicutt*, No. 4:12-CV-00505, 2013 WL 944550, at *2 (E.D. Tex. Feb. 8, 2013) (quoting *In re Triton*, 70 F. Supp. 2d 678, 688 (E.D. Tex. 1999)). "[T]he movant must demonstrate the existence of a contract which contains a forum selection clause." *TM Boyce Feed & Grain, LLC v. nVenia, LLC*, 747 F. Supp. 3d 951, 961 (N.D. Tex. 2024). Plaintiff provided an affidavit from Jack Liu, a product manager for Defendant (Dkt. #8-1). Liu attests that Plaintiff created an account with Defendant on January 14, 2025, and that Defendant's software required Plaintiff to agree to their terms and conditions to access the software (Dkt. #8-1 at pp. 5–7). Liu bases this information on his personal knowledge and information within the possession of Defendant (Dkt. #8-1 at p. 1). This meets the Defendant's evidentiary burden for establishing that an agreement exists. *See Wisdom v. Experian Info. Sols., Inc.*, No. 4:23-CV-93-ALM-KPJ, 2023 WL 9058868, at *5 (E.D. Tex. Nov. 30, 2023) (holding that a defendant met his evidentiary burden in similar circumstances).

The Court overrules Plaintiff's objection that the affidavit is not based on personal knowledge. Especially at an early stage, such as a motion to transfer venue, witnesses may review corporate records to attest to an organization's knowledge and position. *See Crear v. Select Portfolio Servicing Inc.*, 760 F. App'x 291, 294 n.1 (5th Cir. 2019) ("We have recognized that an affiant may have personal knowledge of an organization's practices by participating in those practices and reviewing the organization's records."); *Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 544 n.13 (5th Cir. 2002) (holding that a district court did not abuse its discretion by considering affiant's review of business records); *U.S. v. Herndon*, No. CA C-11-318, 2012 WL 4718622, at *4 (S.D. Tex. Aug. 8, 2012) (citation modified) ("[A]n affidavit can adequately support a motion for summary judgment when the affiant's personal knowledge is based on a review of her employer's business records and the affiant's position with the employer renders her competent to testify on the particular issue which the affidavit concerns.").

Here, the affiant declared that Plaintiff entered the agreement, and based this assertion on information in Defendant's custody regarding the necessary processes for accessing their software (Dkt. #8-1 at pp. 1, 5–7). This satisfies the personal knowledge requirement, especially considering that Plaintiff offers no evidence to contradict Defendant's assertion that the parties entered the agreement. *See Semiconductor Glob. Sols. v. Capital Asset Exch. & Trading, LLC*, 782 F. Supp. 3d 458, 467 (W.D. Tex. 2025) (explaining that once the movant established the existence of a valid forum-selection clause, the defendant should provide evidence to the contrary if they wish to challenge it); *Mellow v. Dep't Stores Nat'l Bank*, No. SA-20-CV-00549-XR, 2020 WL 10056311, at *4 (W.D. Tex. Dec. 1, 2020) ("Plaintiff cites no other evidence in support of her assertion that no agreement was ever made."); *see also Werner v. Holland Am. Line, Inc.*, No. 1:18-CV-00018-TMB, 2019 WL

4169856, at *3–*4 (D. Alaska Sept. 3, 2019). Defendant's affidavits are based on sufficient personal knowledge to establish a valid forum-selection clause.

Plaintiff additionally argues that the Court cannot verify the parties' forum-selection clause because Defendant provided a contract marked with the wrong date, and then only provided the proper version in its Reply (Dkt. #20 at pp. 1–3). Plaintiff further notes that Defendant's updated copy of the agreement cut off some of the language within the contract—though the forum-selection clause language remains legible (Dkt. #20 at pp. 1–3).

Defendant has produced the relevant portions of the agreement such that the Court may confirm the validity of the forum-selection clause. *See Weber*, 811 F.3d at 773–74 (explaining that forum-selection clauses may be viewed separately from the rest of the contract). At early stages of litigation, courts regularly enforce terms-and-conditions agreements when the movant provides a copy of the language at issue and an affidavit stating that the nonmovant must have accepted the terms and conditions. *E.g.*, *Wisdom*, 2023 WL 9058868, at *5 (collecting cases); *Mellow*, 2020 WL 10056311, at *2–*4 (enforcing a terms-and-conditions agreement because of a similar affidavit and a sample of the terms and conditions); *Danley v. Encore Cap. Group, Inc.*, 680 F. App'x 394, 396 (6th Cir. 2017) (unpublished) (affirming district court's decision to compel arbitration based on a sample agreement that contained material terms); *see also JJK Indus. v. KPlus Inc.*, 447 F. Supp. 2d 713, 733 n.4 (S.D. Tex. 2006) (admitting exhibit despite some text being "cut off," subject to plaintiff's production of the complete document later). Applying the presumption of validity, the Court holds that Defendant has satisfied his burden of establishing a valid forum-selection clause. *See Weber*, 811 F.3d at 773–74.

The next issue is whether the forum-selection clause is enforceable. There is a "strong presumption in favor of the enforcement of mandatory [forum-selection clauses]." *Id.* at 774. "The presumption of enforceability may be overcome . . . by a clear showing that the clause is unreasonable under the circumstances." *Haynsworth*, 121 F.3d at 962–63 (citation modified). Plaintiffs do not argue that the forum-selection clause is unreasonable or unenforceable, and as such, the presumption of enforceability applies. *See id.* The provision is valid and enforceable, and the Court will enforce the provision if this action falls within the scope of the clause. *See Davis*, 2023 WL 4670491, at *5.

**C. The language of the forum-selection clause does not cover this dispute.**

This action falls outside the scope of the forum-selection clause's language. For a court to apply a forum-selection clause, the parties' dispute must fall within the language of the forum-selection clause.[3] *Bass v. Maaco Franchisor Spv, LLC*, No. 4:24-CV-820, 2025 WL 1799319, at *4 (E.D. Tex. June 30, 2025) (citation omitted). The Court interprets the forum-selection clause under California law. *See Provitas*, 2021 WL 5907790, at *12 (citations omitted). The analysis begins with "[t]he pertinent language of the forum-selection clause." *Cal-State Bus. Prods. & Servs., Inc. v. Ricoh*, 16 Cal. Rptr. 2d 417, 423 (Cal. Ct. App. 1993). Here, the forum-selection clause reads, "Any action seeking enforcement of this Agreement or any provision hereof shall be brought exclusively in . . . courts located in the [sic] Santa Clara County, California." (Dkt. #8 at p. 3).

[3] Defendant argues that, in California, an action will always fall within the scope of a forum-selection clause if a court "must resort to the terms of the contract to resolve plaintiff's claims" (Dkt. #8 at pp. 6–7). *See E. & J. Gallo Winery v. Encana Energy Servs., Inc.*, 388 F. Supp. 2d 1148, 1162 (E.D. Cal. 2005). This is not so. The action must also fall within the language of the forum-selection clause. *See Mosier v. HSBC Bank USA, N.A.*, No. CV 10-3669 PSG E, 2010 WL 5422550, at *3 (C.D. Cal. Dec. 28, 2010) (interpreting the language of the clause); *Cal-State Bus. Prods. & Servs., Inc. v. Ricoh*, 16 Cal. Rptr. 2d 417, 423–24 (Cal. Ct. App. 1993) (analyzing the "pertinent language of the forum-selection clause"); *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988) (explaining that claims fell within the "plain meaning of the clause"); *contra Terra Intern., Inc. v. Miss. Chem. Corp.*, 922 F. Supp. 1334, 1379–80 (N.D. Iowa 1996) (applying California law).

Plaintiff argues that this is not an action seeking enforcement of the parties' agreement because Plaintiff has brought independent tort claims, as opposed to a breach of contract claim (Dkt. #18 at pp. 12–15). Defendant counters that this is an action seeking enforcement of the agreement, and therefore falls within the language of the forum-selection clause, because Defendant raises the contract as a defense to Plaintiff's tort claims (Dkt. #8 at pp. 8–11). Specifically, Defendant claims that several of the contract's provisions—including its liability limitation, indemnity, and general promissory provisions—will limit Defendant's liability in this action (Dkt. #8 at pp. 8–11).

This is not an "action seeking enforcement" of the parties' agreement because California law does not recognize a party's defenses as the "action." *See Mountain Air Enters., LLC v. Sundowner Towers, LLC*, 398 P.3d 556, 561–64 (Cal. 2017). In *Mountain Air Enterprises*, the Supreme Court of California analyzed similar contractual language and held that the plaintiff's causes of action, rather than the defendant's defenses, determine the purpose of the action. *Id.* at 564.

In that case, the Supreme Court of California had to analyze the language, "any legal action . . . brought for the enforcement of this Agreement." *Id.* at 561. The plaintiff did not seek enforcement of the relevant agreement with its claims, but the defendant raised the contract's provisions as an affirmative defense. *Id.* at 558–59. The California Supreme Court held that the claims fell outside of the contract's language because the defendant's defenses, on their own, cannot define the purpose of the action. *Id.* at 563–64. The court explained that "the assertion of an affirmative defense is *not* contemplated as an 'action' or a 'proceeding.'" *Id.* at 563.

Here, Plaintiff brings this action to assert claims of gross negligence, negligent misrepresentation, contribution, unjust enrichment, and common law indemnity (Dkt. #1 at pp. 23–32). Plaintiff's claims do not seek enforcement of the agreement. Moreover, Defendant's defenses cannot, on their own, "constitute an action." *Mountain Air*, 398 P.3d at 562 (citation modified); *Gil v. Mansano*, 17 Cal. Rptr. 3d 420, 423 (Cal. Ct. App. 2004) ("[A]ssertion of a defense does not constitute the bringing of an action . . . ."); *Salway v. Ocean Towers Hous. Corp.*, 17 Cal. Rptr. 3d 427, 433 (Cal. Ct. App. 2004) ("An 'action to enforce' does not refer to specific pleadings or steps within the action or a defense."). As such, this action falls outside of the scope of the forum-selection clause; indeed, courts in California have come to the same conclusion when analyzing similar tort claims. *E.g.*, *Yan Guo v. Kyani, Inc.*, 311 F. Supp. 3d 1130, 1139–43 (C.D. Cal. 2018) (holding that fraud claims fell outside the scope of a similar forum-selection clause); *Hardy v. Advocare Intl.. LP*, No. 209CV01307JHNPJWX, 2010 WL 11509179, at *3–*5 (C.D. Cal. Dec. 10, 2010) (applying federal law and holding that a negligent misrepresentation claim fell outside a forum-selection clause). This action falls outside the scope of the forum-selection clause, and the Court now must analyze the public and private interest factors to determine whether transfer is appropriate. *See Weber*, 811 F.3d at 766–68.

## III. Private Interest Factors

The Court addresses the private interest factors: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Action Indus., Inc. v. U.S. Fidelity & Guar. Co.*, 258 F.3d 337, 340 (5th Cir. 2004). In its Motion, Defendant does not allege that any of the private interest

factors weigh in favor of transfer (*See* Dkt. #8). However, in the interest of thorough legal analysis, the Court will analyze these factors.

### A. The Relative Ease of Access to Sources of Proof

This first private interest factor "focuses on the location of 'documents and physical evidence relating to the [case].'" *TikTok*, 85 F.4th at 358 (quoting *Volkswagen II*, 545 F.3d at 316). "That means this factor weighs in favor of transfer where the current district lacks any evidence relating to the case." *TikTok*, 85 F.4th at 358.

The parties did not brief this issue, and the Court therefore lacks information regarding relevant evidence. However, "when the vast majority of the evidence is electronic, and therefore equally accessible in either forum, this factor bears less strongly on the transfer analysis." *Id.* at 358–59 (citation modified) (quoting *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022)). This dispute stems from an alleged cyberattack, and therefore a portion of the evidence will likely be stored electronically (*See* Dkt. #1 at pp. 12–20). Given that Defendant bears the burden to show that the transferee venue is "clearly more convenient than the venue chosen by the party"—but Defendant has not identified evidence that will be difficult for the parties to access—the Court finds that this factor remains neutral. *Volkswagen II*, 545 F.3d at 315.

### B. The Availability of Compulsory Process

The second private interest factor considers the availability of compulsory process to secure the attendance of witnesses. *TikTok*, 85 F.4th at 360. This factor "receives less weight when it has not been alleged or shown that any witness would be unwilling to testify." *Id.* (citation modified) (quoting *Planned Parenthood*, 52 F.4th at 630–31). Here, Defendant does not allege that any witness would be unwilling to testify (*See* Dkt. #8). In the absence of such an argument, the Court finds that this factor is neutral. *See TikTok*, 75 F.4th at 360.

**C. The Cost of Attendance for Willing Witnesses**

"The third private factor, which considers the conveniences for witnesses who attend willingly, has been described as the most important factor." *Seagen Inc. v. Daiichi Sankyo Co.*, 546 F. Supp. 3d 515, 531 (E.D. Tex. 2021) (citations omitted). In considering the availability and convenience of witnesses, the Court must focus primarily upon the availability and convenience of key witnesses. *Shoemake v. Union Pac. R.R. Co.*, 233 F. Supp. 2d 828, 832 (E.D. Tex. 2002). The Fifth Circuit uses a 100-mile threshold to assess this factor. *TikTok*, 85 F.4th at 361 (citing *Volkswagen II*, 545 F.3d at 317). "When the distance between an existing venue for trial and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to the witnesses increases in direct relationship to the additional distance to be traveled." *Id.* (citation modified). The costs imposed on witnesses "has greater significance when the distance is greater than 100 miles." *In re Radmax, Ltd.*, 720 F.3d 285, 289 (5th Cir. 2013) (per curiam). Finally, the convenience of party witnesses is given relatively little weight when compared to non-party witnesses. *United States ex rel. Ferguson v. Lockheed Martin Corp.*, No. 4:20-CV-097, 2023 WL 8719443, *4 (E.D. Tex. Dec. 18, 2023).

The Eastern District of Texas and Northern District of California are over 100 miles apart from each other. Ordinarily, the Court would grant greater significance to this factor because of the distance. *See Tiktok*, 85 F.4th at 361. However, the parties do not identify any witnesses, nor assert that the Eastern District of Texas would be inconvenient for them. As such, this factor weighs neutral. *See Volkswagen II*, 545 F.3d at 315 (explaining that in the absence of a showing by Defendant, "the plaintiff's choice should be respected").

### D. Other Practical Problems

The fourth private interest factor is a catchall where the Court "considers 'all other practical problems that make trial of a case easy, expeditious, and inexpensive.'" *TikTok*, 85 F.4th at 362 (quoting *Volkswagen II*, 545 F.3d at 315). In particular, the presence of parallel litigation involving the same or similar issues may create practical challenges that weigh in favor of or against transfer. *Ferguson*, 2023 WL 8719443, at *5. This factor considers whether related cases are pending and their impact on judicial economy. *Id.* (citing *ACQIS LLC v. EMC Corp.*, 67 F. Supp. 3d 769, 777–78 (E.D. Tex. 2014)).

Here, Plaintiff's ongoing litigation in the Eastern District of Texas disfavors transfer. The existence of related litigation is a strong factor in the Court's venue transfer determination. *Ogden v. Signature Indus. Servs., LLC*, No. 1:22-CV-52, 2022 WL 4004786, at *10 (E.D. Tex. Mar. 30, 2022) (citing *Jarvis Christian Coll. v. Exxon Corp.*, 845 F.2d 523, 528–29 (5th Cir. 1988)). Plaintiff is defending over thirty lawsuits that clients and other parties have filed against it, all stemming from the underlying events of this dispute (Dkt. #1 at pp. 5–6). Those actions have since been consolidated into three actions in the Eastern District of Texas (Dkt. #1 at p. 35). This final private interest factor weighs strongly against transfer because of the related pending litigation. *See Ogden*, 2022 WL 4004786, at *10.

## IV. Public Interest Factors

The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Volkswagen II*, 545 F.3d at 315 (citation modified).

### A. Administrative Difficulties Flowing from Court Congestion

The first public interest factor considers whether the case will proceed to trial in a timely manner, as compared to if the case were proceeding in the other venue. *TikTok*, 85 F.4th at 363 (citation omitted). "One element to be considered stems from the administrative difficulties that arise when courts become congested with litigation that should have been handled at its place of origin." *Alaniz v. Liberty Life Assurance Co. of Bos.*, No. 1:18-CV-297, 2018 WL 11428242, at *7 (E.D. Tex. Oct. 4, 2018). Defendant submits judicial caseload statistics and suggests that they favor transfer because docket congestion is only slightly higher in the Northern District of California compared to the Eastern District of Texas (Dkt. #8 at p. 14). However, those statistics also show that the Northern District of California has a significantly higher median number of months from case filing to disposition compared to the Eastern District of Texas—20.5 months from filing to disposition compared to 7.4 months from filing to disposition.[4] The median number of months from filing to trial is also higher in the Northern District of California—40.2 months from filing to trial compared to 25.9 months from filing to trial.[5] These figures demonstrate a higher level of docket congestion in the Northern District of California compared to the Eastern District of Texas. Therefore, this public interest factor disfavors transfer. *See TikTok*, 85 F.4th at 363.

### B. Local Interest

The second public interest factor is the local interest in having localized disputes decided at home. *Volkswagen II*, 545 F.3d at 315. A judicial district has a "strong local interest" in cases involving a corporate party headquartered in that district. *See Moates*, 2022 WL 2707745, at *5.

---

[4] *Federal Court Management Statistics*, United States Courts, https://www.uscourts.gov/sites/default/files/document/fcms_na_distprofile0331.2025.pdf.

[5] *Id.*

Plaintiff and Defendant are headquartered in the Eastern District of Texas and Northern District of California, respectively, so the headquarter consideration is neutral (Dkt. #8 at p. 15). *See id.* However, the connection between the events giving rise to the suit and the particular forum is a more important consideration than the parties' locations. *TikTok*, 85 F.4th at 364 (citation modified) ("The place of the alleged wrong is one of the most important factors in venue determinations."). Here, the data-breach incident occurred virtually, but the alleged reputational harm and subsequent litigation occurred in the Eastern District of Texas (Dkt. #18 at pp. 18–19). Moreover, the cyberattack actor held Plaintiff's data for ransom, and directed threats towards Plaintiff in Plano, Texas (Dkt. #1 at ¶¶ 36–37). Because the actions underlying this suit have a connection to the Eastern District of Texas, this factor weighs slightly against transfer. *See TikTok*, 85 F.4th at 365–65 (explaining that the location of code engineers granted their district a slight local interest in resolving a virtual dispute).

### C. Familiarity of the Forum with the Governing Law

The third public interest factor is each district's "familiarity . . . with the law that will govern the case." *Volkswagen II*, 545 F.3d at 315. "This factor does not weigh in favor of transfer when both districts are 'equally capable of applying the relevant law.'" *TikTok*, 85 F.4th at 365 (quoting *Radmax*, 720 F.3d at 289). The relevant law in this case is California law (Dkt. #8 at pp. 4–5, 15; Dkt. #19-2 at p. 27). While both federal districts are capable of applying California law, the Fifth Circuit instructs that courts should prefer the venue with familiarity of the underlying substantive law if the action will invoke some "exceptionally arcane feature" of that substantive law. *TikTok*, 85 F.4th at 365–66. Plaintiff's claims for negligence, gross negligence, negligent misrepresentation, unjust enrichment, and common law indemnity are common tort actions. They

are unlikely to invoke any exceptionally arcane features of the law, which means that this factor is neutral. *See id.*

### D. Avoidance of Unnecessary Conflict of Laws Problems

Finally, the Court will consider "the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Volkswagen II*, 545 F.3d at 315 (citation modified). This factor "looks to the likelihood of unnecessary problems" related to choice of law issues. *Davis*, 2023 WL 4670491 at *17. This is not disputed in the instant case (*See* Dkt. #8 at p. 15; Dkt. #18 at p. 14). Accordingly, this factor is neutral.

## V. The public and private interest factors disfavor transfer.

In sum, three private interest factors are neutral and one strongly disfavors transfer. Two public interest factors are neutral and two public interest factors disfavor transfer. Weighing all of the factors, and giving consideration to Plaintiff's choice of forum, Defendant has not carried its burden of demonstrating that the transferee venue is "clearly more convenient than the venue chosen by the party." *Volkswagen II*, 545 F.3d at 315. The Court therefore denies Defendant's motion to transfer venue under § 1404(a).

## CONCLUSION

It is therefore **ORDERED** that Defendant's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(A) (Dkt. #8) is hereby **DENIED**.

**IT IS SO ORDERED.**

**SIGNED this 28th day of September, 2026.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE